IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2005

## STATE OF TENNESSEE v. ROBERT WAYNE PRYOR

**Direct Appeal from the Circuit Court for Bedford County**
**No. 15244     Charles Lee, Judge**

─────────────

**No. M2003-03124-CCA-R3-CD - Filed April 26, 2005**

─────────────

A Bedford County jury convicted the defendant, Robert Wayne Pryor, of robbery, a Class C felony. Following a sentencing hearing, the trial court sentenced him as a Range I, standard offender to five years and six months in the Department of Correction consecutive to sentences in another case for which he was on probation. In this appeal, the single issue presented for our review is whether the evidence was sufficient to support the conviction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal) and Andrew Jackson Dearing, III., Assistant Public Defender (at trial),  for the appellant, Robert Wayne Pryor.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; W. Michael McCown, District Attorney General; and Michael Randles and Ann Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### Facts and Procedural History

Kevin Taylor, the victim in this case, testified at trial that he was watching television at approximately 12:40 a.m. on the couch in his trailer on the evening of December 31, 2002, when Benny Lotty, John "John Boy" Bingham, and the defendant knocked on his door. After a brief visit, Taylor asked the three men to leave and went to sleep. Taylor stated that he was awakened shortly thereafter by the sound of something "prying at the door." He testified that, upon opening the door, Bingham and the defendant forced their way back into the trailer, armed with butcher knives. Taylor testified that he then grabbed a knife and fled to the nearby home of Robert Taylor ("Uncle Bay"), his uncle.

Uncle Bay testified that he accompanied Taylor back to the trailer and that Taylor was visibly nervous, excited, and scared. Taylor testified that, upon his return, he found his stereo "busted" in the yard, his grill thrown against his window, and saw Bingham and the defendant carrying his television set behind the trailer and over a fence. Uncle Bay also testified that "the stereo was laying on the sidewalk between the door and the window, and they was putting the television over the fence into the next trailer park." Upon seeing Bingham and the defendant carrying the television, Uncle Bay yelled, "[h]old it. I have got a gun," causing Bingham and the defendant to drop the television and leave.

David Stemper lived near Taylor in the trailer park. Stemper testified that he observed "two gentlemen pushing a large television over a fence." He stated that "you could hear them pushing it end over end near the rear of it to get it over the hump, near the back of the trailer."

Patrolman Cody King of the Shelbyville Police Department testified that, when he arrived, Taylor still appeared scared and upset. Patrolman King stated that he saw "[a] stereo on the sidewalk, outside of the front door [and] a TV across the fence in front of another trailer" and that Taylor's window was "shattered." Patrolman King testified that, while the stereo was broken, "[he] didn't see anything broken on [the television]." Patrolman King also acknowledged that he did not find any knives during the investigation.

Patrolman Billy Smith of the Shelbyville Police Department arrived at the scene at roughly the same time as Patrolman King. Patrolman Smith also testified that "[t]here was a stereo system laying in the front yard and a TV across the chain link fence." After Taylor gave a description of Bingham and the defendant, Patrolman Smith and other officers searched the surrounding area. Patrolman Smith testified that, when Bingham and the defendant were located and arrested, Bingham stated, "they ripped us in a drug deal" and that "they deserved what they got."

Patrolman Rod Lewis Stacy of the Shelbyville Police Department was also present at the time the defendant and Bingham were arrested. Patrolman Stacy testified that Bingham made the statements, "[t]hey deserved it" and "[t]hey shouldn't have screwed us on the drug deal."

The defendant testified that he and Bingham were attempting to trade Taylor some marijuana and money for cocaine the night of the offense. However, the defendant stated that, upon entering Taylor's trailer, a fight ensued and that he was robbed of his marijuana and money. The defendant testified that, out of anger, he threw a grill "through the window" and told Bingham that "[t]hese sons of bitches just robbed me. They took everything I had, pot and money." The defendant testified that Taylor then came out with a knife. The defendant stated that, after he and Bingham wrestled the knife away, Taylor ran down the street. The defendant stated that he then "went in and started breaking stuff." He stated:

> I grabbed the TV. I got John Boy to help me grab the TV. We threw it outside. I went outside and stomped the stereo a couple of times. I kicked the TV a couple of times.

. . . .

I didn't want to steal nothing.  I wanted to break a lot of stuff.

. . . .

Because they had stole my pot and my money.

Bingham corroborated the defendant's testimony at trial, adding that "[w]e slung [the TV] over the fence . . . jumped over the fence and started kicking it.  Just kicking the heck out of it, trying to break it."  Bingham also testified that, when Taylor and Uncle Bay returned to the trailer, "[w]e turned around and walked off.  We [were] still mad. . . . Somebody could have got shot over it."

At the conclusion of the evidence, the jury found the defendant guilty of robbery.  Following a sentencing hearing, he was sentenced to five years and six months in the Department of Correction.  The defendant then filed a timely notice of appeal.

**Analysis**

The defendant's sole issue on appeal is whether the evidence is sufficient to sustain his conviction for robbery.  He argues that the testimony of the victim in this case is "incredible and should be discounted" and asks this Court to bolster the credibility of the defense witnesses in order to overturn his conviction.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt.").

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom.  See State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000).  A guilty verdict removes the presumption of innocence so that, on appeal, a convicted criminal defendant who challenges the sufficiency of the evidence bears the burden of demonstrating why the evidence is insufficient to support the verdict.  See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); Carruthers, 35 S.W.3d at 557-58; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  We will not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State.  See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984).  Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are to be resolved by the trier of fact.  See Evans, 108 S.W.3d at 236; State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear."  Tenn. Code Ann. § 39-13-401(a) (2003).  The

victim testified that the defendant forcibly entered his home. Three witnesses testified to seeing the defendant in the act of removing the victim's television set, from which the jury could infer the defendant's intent to deprive the owner. Viewing the evidence in a light most favorable to the State, the evidence supports the defendant's conviction.

The defendant's argument on appeal challenges the credibility of the witnesses. In this case, the testimony of the victim was divergent from the testimonies of defense witnesses regarding the underlying facts. As stated, questions concerning the credibility of witnesses and factual discrepancies raised by the evidence are reserved for the trier of fact. By their verdict, the jury chose to accredit the testimony of the State's witnesses. We conclude that the evidence is sufficient to support this finding. Accordingly, this issue is without merit.

## Conclusion

The judgment of the trial court is affirmed.

_____
J.C. McLIN, JUDGE